## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **NATURS DESIGN, INC.,**<br>**a Michigan corporation,** | |
| **Plaintiff,** | Case No. _____ |
| **v.** | |
| **SILENT NIGHT, LLC,**<br>**a Michigan limited liability company,**<br>**and BRUCE O. BAKER, an**<br>**individual,** | *INJUNCTIVE RELIEF REQUESTED*<br><br>*JURY TRIAL DEMANDED* |
| **Defendants.** | |

## COMPLAINT



This is an action by Naturs Design, Inc. ("Naturs") to recover damages arising from unfair competition by defendants Silent Night, LLC ("Silent Night") and Bruce O. Baker, an individual ("Baker") (collectively, "Defendants"), and to enjoin future unfair competition, as well as for lost profits arising from the unfair competition. In furtherance of this action, Plaintiff Naturs hereby complains and alleges as follows:

## THE PARTIES

1.      Plaintiff Naturs Design, Inc. is a corporation organized and existing under the laws of the State of Michigan, having a registered address and place of business at 274 W. Cortland St., Jackson, Michigan 49201.

2.      Upon information and belief, Defendant Silent Night is a limited liability company organized and existing under the laws of the State of Michigan, and has a place of business at 17335 Townline Lake Road, Big Rapids, Michigan 49307.

3.      Based on information and belief, Defendant Baker is the sole member of Silent Night and resides at 17335 Townline Lake Road, Big Rapids, Michigan 49307. Based on information and belief, Baker is personally responsible for Silent Night's manufacturing, marketing and sale of the Silent Night Comfort Seal Liners.



1

## JURISDICTION AND VENUE

4.      Because this civil action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and specifically 15 U.S.C. § 1125(a)(1)(B), this Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

5.      This Court has subject matter jurisdiction over Naturs' Michigan unfair competition claims pursuant to 28 U.S.C. § 1338(b), in that these claims are joined with a substantial related claim under the Lanham Act.   This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over the Defendants because, among other reasons, Defendants reside and have done business in this District, and Defendants have committed and continues to commit acts of unfair competition in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1391.

## BACKGROUND

8.      Naturs is the manufacturer of an innovative liner for a Constant Positive Airway Pressure ("CPAP") mask.   Naturs' CPAP mask liners were developed by Robert M. Rutan, the CEO of Naturs.   Several years ago, Mr. Rutan's wife was diagnosed with obstructive sleep apnea ("OSA"), and started using a CPAP mask during sleeping hours to counter the effects of lack of sleep caused by OSA. However, the use of the CPAP mask brought about its own problems, *e.g.*, the mask



would lose its seal and create a squealing noise, and would make the user's face hot and sweaty.

9.      The Rutans searched for a product that would address one or more of these issues, but could not find anything that would offer relief.  Instead, all they found were anecdotal suggestions, *e.g.*, tighten your mask, try a different mask, remove any lotion from your face, etc.  These suggestions simply did not work, and the Rutans became more desperate for a solution.

10.     At this point, Mr. Rutan came up with an idea for a liner for use with the CPAP mask.  Mr. Rutan developed a prototype and tested it, and found that it was a solution that addressed the problems Mrs. Rutan had with the use of the CPAP mask.

11.     As a result of his innovative solution, Mr. Rutan was awarded U.S. Patent No. 8,365,733 on his liner, among other U.S. and foreign patents.

12.     Naturs began selling its inventive CPAP mask liners in late 2008, and is currently selling its CPAP mask liners under the RemZzzs trademark.  Naturs' CPAP mask liners have achieved significant commercial success.

13.     Naturs' RemZzzs liners are sold in monthly packs of thirty liners.  Each RemZzzs liner is intended to be used for one night and then discarded.  The retail price for a thirty-day supply of RemZzzs liners is $29.95.



3

14.   Upon information and belief, in late 2013, Defendants began selling a competing liner for CPAP masks.   In a related case, Naturs has alleged that Defendants copied the RemZzzs liner in creating Defendants' competing liner. (*Naturs Design, Inc. v. Silent Night, LLC et al.*, Case No. 4:15-cv-10700-LVP-RSW (E.D. Mich.).)

15.   Like Naturs, Defendants sell their liners in a monthly package. Defendants' monthly package of liners, however, contains only four liners with each liner meant to be worn for approximately one week.   The retail price for Defendants' monthly supply of four liners is $24.95.

16.   Defendants' CPAP mask liner constitutes a medical device under Federal Regulation 21 C.F.R. §880.5300.

17.   On its website, www.silentnighthealth.com, Defendants claim that their liners are made of "Anti-Bacterial / Anti-Microbial Fabric" as shown in the screenshot below:





A true and correct copy of Defendants' website showing the above statement is attached hereto as Exhibit A.

18.    Upon information and belief, Defendants have claimed that their product is antibacterial and antimicrobial since at least as early as December 2013 when they began selling their CPAP mask liner.

19.    According to the Internet Archive, Defendants have claimed online that their CPAP mask liner is antibacterial and antimicrobial at least as early as October 22, 2014.  (*See* Exhibit B, printout from the Internet Archive.)

20.    In the Frequently Asked Questions ("FAQ") section of its website, Defendants state the following regarding the antimicrobial compound contained on their liners: "Applied during the manufacturing process, the antibacterial/antimicrobial component is a hygienic, biodegradable, non-leeching, EPA registered SILVERPLUS® micro particle dispersion product which is widely used in hospital, military and sportswear applications."  The FAQs section further states "[w]e do not recommend washing the Silent Night liner.  If you do choose to hand rinse the liner, the antibacterial and antimicrobial properties will be retained."  A true and correct copy of the portion of Defendants' website containing this statement is attached hereto as Exhibit C.

21.    Upon information and belief, SILVERPLUS® is manufactured and distributed by Rudolf GmbH ("Rudolf").  According to Rudolf's website, "the



5

SILVERPLUS® finish protects [] textiles from unpleasant body [odors]." A true and correct copy of Rudolf's webpage describing SILVERPLUS® is attached hereto as Exhibit D.

22.    According to a disclaimer on Rudolf's website, SILVERPLUS® is non-medical and should not be directly used on humans:

> **All SILVERPLUS® products are non-medical products**. They are not designed or approved for the direct use in or on humans, animals or plants. This means that SILVERPLUS® products must neither be directly taken (eg in the form of drops), nor be directly applied onto the body (eg in the form of cream lotion), nor be recommended or marketed for this field of application.

(emphasis added). Rudolf's disclaimer also goes on to note that the United States has "special regulations for treated articles." A true and correct copy of the Rudolf disclaimer webpage is attached hereto as Exhibit E.

23.    Rudolf's website also provides specific guidance regarding the use of SILVERPLUS® in the United States. More specifically, Rudolf informs its customers that the use of SILVERPLUS® in the United States is regulated by the Environmental Protection Agency ("EPA"):

> Any product offered for sale in the U.S. that claims to control or mitigate pests, including microorganisms, must be registered by the EPA. However, the EPA will exempt, from the registration requirements, articles that have been treated with an antimicrobial preservative such as SILVERPLUS® provided the label claims on the finished article are limited to preservation of the article itself and not protection of the user against pathogenic organisms.



Rudolf's website also makes clear that the EPA prohibits users of SILVERPLUS®

from making any health claims, such as claims that a product is antibacterial, stating:

> EPA will allow what they consider "non-public health" claims as
> identified in PR Notice 2000-1 on products. Examples of acceptable
> non-public health claims would include:
>
> - claims to inhibit or prevent the growth of odor causing bacteria;
> - claims to inhibit the growth of mildew or mold that may cause
>   deterioration of the product.
>
> Examples of unacceptable claims include:
>
> - antibacterial, bactericidal, germicidal;
> - controls both gram positive and negative bacteria

Finally, Rudolf suggests that anyone selling products treated with SILVERPLUS®

consult with "an expert in the area of U.S. treated article policy."  A true and correct

copy of Rudolf's webpage regarding the use of products treated with

SILVERPLUS® in the United States is attached hereto as Exhibit F.

24.    The EPA considers silver-containing antimicrobial treatments,

including SILVERPLUS® to be pesticides that are regulated subject to the Federal

Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* (*See*

Exhibit G, printout from epa.gov.)  Pursuant to 40 C.F.R. § 152.25(a), articles treated

with pesticides are exempt from EPA registration as long as the party selling those

articles does not make public health claims regarding the treated articles.  If a party

chooses to make public health claims regarding pesticide-treated articles, that party

must register the treated article with the EPA.  (*See* Exhibit H, EPA Pesticide



7

Registration Notice 2000-1, at 8.)  The EPA considers claims that a pesticide treated article is "antibacterial" to be public health claims that require registration of the pesticide-treated product with the EPA.  (*Id.* at 5.)

25.   Upon information and belief, Defendants have not registered their SILVERPLUS®-treated CPAP mask liner with the EPA.

26.   Upon information and belief, Defendants have not conducted any tests to support their claims that their liners are antibacterial and/or antimicrobial, nor have they submitted any testing supporting these claims to the EPA.

27.   Defendants' public health claim that their SILVERPLUS®-treated CPAP mask liner are antimicrobial and/or antibacterial thus constitutes a violation of 40 C.F.R. § 152.25(a).

28.   Defendants' claims that their product is antimicrobial and/or antibacterial are also contrary to the statements made by Rudolf.  Rudolf specifically states that SILVERPLUS® is a non-medical product, yet Defendants claim that SILVERPLUS® is used to provide antibacterial and antimicrobial protection on their CPAP mask liner, which is a medical device.

29.   Defendants have used their false claims that their CPAP mask liners are antibacterial and/or antimicrobial to unfairly compete against Naturs.  Defendants have advertised that each Silent Night CPAP mask liner product can be used for a week because it is made of antimicrobial and antibacterial fabric.  By making these



false claims, Defendants' one-month supply of CPAP mask liners contains only four liners whereas Naturs' one-month supply of RemZzzs liners contains thirty liners. This means that Defendants have a lower cost of goods which allows Defendants to undercut the pricing of Naturs' RemZzzs product.

30.     Absent Defendants' false claims regarding the antimicrobial and antibacterial nature of their CPAP mask liners, consumers would be less likely to believe that a single CPAP mask liner could be used for an entire week and, accordingly, would be less likely to buy Defendants' product.

31.     Upon information and belief, Defendants knew that their claims that SILVERPLUS® rendered its CPAP mask liner antibacterial and antimicrobial were false because Defendants were aware of Rudolf's statements that: (1) SILVERPLUS® was for non-medical use; and (2) sellers of SILVERPLUS® treated articles in the United States were not allowed to claim that their products were antibacterial under EPA regulations.

## CLAIMS

Based on the above-described events and products, Naturs asserts the following causes of action against Defendants.  These causes of action are detailed as follows.



9

## COUNT I
### False Advertising under 15 U.S.C. § 1125(a)

32.     Naturs incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

33.     Naturs sells its RemZzzs CPAP mask liners in interstate commerce throughout the United States.

34.     Defendants sell their CPAP mask liners in interstate commerce throughout the United States and Defendants' CPAP mask liners compete with Naturs' RemZzzs CPAP mask liners.

35.     Defendants engage in commercial advertising in interstate commerce across the United States, at least through their website at www.silentnighthealth.com.

36.     Defendants' advertisements contain false and misleading statements of fact concerning their own products.

37.     Defendants' false and misleading commercial advertising in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that: it contains false and/or misleading statements of fact in commercial advertising; those representations are material; they are likely to influence the purchasing decision of a substantial number of reasonable consumers; those misrepresentations actually deceive or, at a minimum, have the tendency to deceive a substantial segment of the reasonable consumer audience; and, Naturs has been injured, and in the future is



10

likely to continue to be injured, as a result of the misrepresentations, both by the direct diversion of sales from Naturs to Defendants and by a lessening of the goodwill associated with Naturs' products.

38.     Defendants have made false or misleading statements with knowledge of their falsity and/or misleading character, and/or willfully and with reckless disregard for their falsity or misleading character.

39.     Naturs has no adequate remedy at law with respect to Defendants' future false and misleading commercial advertising precisely because Naturs is informed and believes that Defendants will continue in their same course of conduct unless and until they have been restrained by an order of this Court.

40.     Defendants' intentional and willful violations entitle Naturs to recover three times its actual damages in an amount to be determined at trial and attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT II**
**Common Law Unfair Competition**

41.     Naturs incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

42.     On the basis of the foregoing, Defendants, in the conduct of their business, trade and commerce, have engaged and are engaging in conduct that is



11

deceptive or misleading in a material respect, that violates the Environmental Protection Act, and thus constitutes common law unfair competition.

43.     Defendants engaged and continue to engage in these activities knowingly and willfully.

44.     As a direct and proximate result, Naturs has suffered injury and harm and will continue to suffer injury and harm both by the direct diversion of sales from Naturs to Defendants and by a lessening of the goodwill associated with Naturs' mask liner products, in an amount to be determined at trial.

45.     Naturs has no adequate remedy at law with respect to Defendants' future conduct because Naturs is informed and believes that Defendants will continue in their same course of conduct unless and until they have been restrained by an order of this Court.

## COUNT III
## Violation of the Michigan Consumer Protection Act

46.     Naturs incorporates and realleges, as if fully set forth in this paragraph, the allegations of the foregoing paragraphs.

47.     Defendants' sale of their products constitutes "trade or commerce" within the meaning of § 445.902(1)(g) of the MCPA, MCL § 445.901, *et seq*.



48.     Defendants' actions as set forth constitute a representation that goods have a characteristic or benefit that they do not have within the meaning of the MCPA.  MCL § 445.903(1)(c).

49.     Naturs has suffered irreparable harm as a direct and proximate result of Defendants' actions.

50.     An award of monetary damages alone cannot fully compensate Naturs for its injuries, and Naturs lacks an adequate remedy at law.

## DEMAND FOR RELIEF

Accordingly, Naturs respectfully demands that this Court enter judgment:

A.     A determination that Defendants are liable to Naturs for false advertising under 15 U.S.C. § 1125(a) and that Naturs has been damaged by such violations;

B.     A determination that Defendants are liable to Naturs for common law unfair competition;

C.     A determination that Defendants have violated the Michigan Consumer Protection Act, and award of all damages, including costs and reasonable attorneys' fees, as authorized by that Act;

D.     A determination that this case is "exceptional," under 15 U.S.C. § 1117(a);



13

E.     Under all claims for relief, that an injunction be temporarily, preliminarily, and permanently issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions, from directly or indirectly making claims that the Silent Night CPAP mask liners have any public health benefits, including but not limited to claims that the Silent Night CPAP mask liners are antimicrobial and/or antibacterial;

F.     An Order directing that Defendants deliver for destruction all products, labels, samples, prints, packages, wrappers, and advertisements in the possession of Defendants containing any claims that the Silent Night CPAP mask liners have any public health benefits, including but not limited to claims that the Silent Night CPAP mask liners are antimicrobial and/or antibacterial, and that all plates, molds, matrices and other means of making the same shall be delivered up and destroyed, pursuant to 15 U.S.C. § 1118;

G.     An Order directing Defendants to recall from any distributors and retailers and to deliver to Naturs for destruction all remaining inventory of Silent Night CPAP mask liners claiming that Silent Night CPAP mask liners have public health benefit, including but not limited to claims that Silent Night CPAP mask liners are antimicrobial and/or antibacterial;



14

H.   An Order directing any such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that Silent Night Night CPAP mask liners have any public health benefits, including but not limited to erroneous impressions that Silent Night CPAP mask liners are antimicrobial and/or antibacterial;

I.   An Order directing Defendants and their employees, agents, successors and assigns, and all those in active concert and participation with Defendants, to file with this Court, and serve upon Naturs' counsel within thirty (30) days after entry of such judgment, a written report under oath, setting forth in detail the manner and for in which they have complied with such judgment;

J.   For an award of Naturs' damages arising out of Defendants' acts;

K.   For an award of Naturs' damages trebled or, alternatively, an award of Defendants' wrongful profits trebled, whichever is greater, plus Naturs' costs and attorneys' fees, pursuant to 15 U.S.C. § 1117;

L.   For an award of interest, including pre-judgment interest on the foregoing sums; and

M.   For such other and further relief as the Court may deem just and appropriate.



15

## **DEMAND FOR JURY TRIAL**

Naturs respectfully demands a trial by jury of any and all issues triable of right by a jury in the above-captioned action.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  January 24, 2017

 /s/ Matthew M. Jakubowski
Mark A. Cantor (P32661)
Matthew M. Jakubowski (P63194)
Rebecca J. Cantor (P76826)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel:  (248) 358-4400 / Fax:  (248) 358-3351
Email:  mcantor@brookskushman.com
        mjakubowski@brookskushman.com
        rcantor@brookskushman.com

*Attorneys for Plaintiff*



16